**Ashwin Ladva, Esq. (S. Bar # 206140)**
**Scott S. Nakama (SB# 296732)**
**LADVA LAW FIRM**
530 Jackson Street, 2nd Floor.
San Francisco, CA 94133
(415) 296-8844
(415) 296-8847 (f)

**Daniel Martinez de la Vega, Esq. (SB# 255885)**
**LAW OFFICES OF DANIEL VEGA**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: (415) 287-6203
Fax: (415) 704-5067
dvega@vegalawyer.com

Attorneys for Plaintiff Manuel Reyes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL REYES, | Case No.: 4:21-cv-03362-PJH |
| Plaintiff, | **PLAINTIFF REYES' OPPOSITION TO DEFENDANT'S MOTION/APPLICATION TO COMPEL ARBITRATION** |
| vs. | |
| HEARST COMMUNICATIONS, INC., and DOES 1–10, inclusive, | **Date: August 12, 2021**<br>**Time: 1:30 pm**<br>**Location: Videoconference** |
| Defendant. | **Judge: Honorable Phyllis J. Hamilton**<br>**Action Filed: May 5, 2021** |

**TABLE OF CONTENTS**

I. INTRODUCTION 1

II. FACTUAL BACKGROUND 1

    A. The 2019 Martel v. Hearst & Sanchez v. Hearst case. 1

    B. October 2019 Labor Board Award in Hernandez v. Hearst. 1

    C. The Sanchez Matter. 2

    D. Plaintiff Manuel Reyes is a Spanish Speaker. 2

    E. Production of Arbitration Agreement and Release. 2

III. ARGUMENTS 4

    A. The FAA Exempts Transportation Workers from Arbitration. 4

    B. The Release & Arbitration Provision do not Cover Dealer Misclassification Piece-Rate Claims. 6

    C. The Arbitration Agreement was Unconscionable. 10

        1. The Arbitration Agreement was Procedurally Unconscionable. 10

            a. Defendant's Release Provision is Oppressive. 11

        2. The Arbitration Agreement is Substantially Unconscionable. 13

    D. The Arbitration Agreement does not meet the Armenariz Standard. 15

IV. CONCLUSIONS 15

# I. INTRODUCTION

Defendant's Motion to Compel Arbitration must be denied because (1) Plaintiff is exempt under the Federal Arbitration Act ("FAA") as a transportation driver, (2) the arbitration agreement does not cover claims for misclassification as an independent contractor, (3) the arbitration agreement is procedurally and substantially unconscionable as Plaintiff was forced to sign the arbitration agreement and releases of liability as condition of further employment and Defendant refused to give Plaintiff a version of the agreement in his native Spanish language, (4) the agreement does not meet the requirements of the California Supreme Court in *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 102 (2000) as the arbitration agreement requires Plaintiff to pay half of the arbitrator's fees, (5) the agreement was entered into by coercive and misleading means as the agreement also included a one-sided release where Plaintiff releases claims while Defendant does not release any claims against Plaintiff, and (6) there was no mutual consent as the agreement is vague and misleading. The clause makes a single reference to "employment," is devoid of any specifics of Plaintiff's rights as an employee vs. a contractor and cites that the AAA Commercial rules apply instead of AAA employment law rules.

# II. FACTUAL BACKGROUND

### A. The 2019 Martel v. Hearst & Sanchez v. Hearst case

The *Martel* action where a Bay Area Dealer was found to be misclassified was originally filed in San Mateo Superior Court on April 17, 2019. (Request for Judicial Notice (*Martel v. Hearst Communications Inc.*, No. 3:19-cv-02715-WHA) ("RJN"), Exhibit A). The Complaint alleged that Martel was misclassified as an independent contractor by Defendant to pick up and deliver newspapers. (RJN, Exhibit A at pg. 5-9 and ¶¶ 11-31). The Complaint alleged causes of action of 1. Failure to compensate piece rate employees for rest and recovery periods and other nonproductive time; 2. Failure to provide meal periods; 3. Failure to provide rest periods; 4. Failure to pay minimum and overtime wages; 5. Failure to maintain accurate and complete employment records; 6. Failure to provide accurate itemized wage statements; and 7. Failure to reimburse business expenses. (RJN, Exhibit A). *Martel*

was removed to the Northern District. (RJN Exhibit B). Martel disclosed potential damage of over $500,000 in August of 2019. (RJN Exhibit F). On June 25, 2020, Judge William Alsup granted summary judgment in favor of Martel. (RJN, Exhibit C).

**B.     October 2019 Labor Board Award in Hernandez v. Hearst Communications, et al.**

On October 4, 2019, the Labor Board awarded a worker $43, 315.27 who performed services as a News Paper Carrier for Hearst from March 2015 to March 2018 in California. (RJN, Exhibit J). Hearst testified that newspaper delivery was a necessary function for Hearst. *Id.* at pg. 14, LNS. 26-27.

**C.     The Sanchez Matter**

On July 27, 2020, the *Sanchez v. Hearst*, No. 3:20-cv-05147-VC matter was filed in the Northern District. (RJN, Exhibit G). The current *Sanchez* class action allege identical claims as *Martel* except on a class wide basis. (RJN, Exhibit H,). The class is on behalf of people throughout California who contracted with Defendant to provide for distribution and delivery of print media products including the San Francisco Chronicle and other publications, to Defendant's customers in the State of California from July 27, 2016 to the present. (*Id.* at ¶46.).

**D.     Plaintiff Manuel Reyes is a Spanish Speaker.**

Plaintiff is a native Spanish speaker and was born in El Salvador. (Declaration of Manuel Reyes ("Reyes Decl."), ¶¶ 3-4). He did not graduate college. *Id.* at ¶ 5. He is not fluent in reading or writing English. *Id.* at ¶ 6. Similar to *Martel*, *Hernandez*, and *Sanchez*, Plaintiff's lawsuit alleged wage and hour claims by being misclassified as an independent contractor as a newspaper dealer or other similar job title and that Defendants required Plaintiff to pick up and deliver newspapers by certain specified times hours and times. (DKT. No. 1, pg. 3-5, ¶¶ 8-13). Plaintiff delivers the following publications: San Francisco Chronicle, Wall Street Journal, Barrons, BSUN, Bang TV, China Daily, Financial Times, IBD, Korean Times, the New York Times and SF TV Weekly. (Reyes Decl. ¶¶ 25-26). Plaintiff also delivers advertisements that were shipped from other states. *Id.* at ¶ 28.

**D.     Production of Arbitration Agreement and Release.**

2

Opposition to Defendant's Motion to Compel

On June 14, 2021, Defendant's counsel provided Plaintiff's counsel with copies of Plaintiff's 2019 independent contractor agreements that contained an arbitration clause and revised releases. (Nakama Decl., ¶ 3, Exhibits A-C).   (Nakama Decl., Exhibit A, pg. 3, ¶ 17); (Nakama Dec. Exhibit C, pg. 10, ¶ 17). The releases only require that Plaintiff release all claims against Defendant while Defendant did not release any claims against Plaintiff. *Id.*  The arbitration agreement stated that it was govern by the Federal Arbitration Act.  According to the agreement, "The Arbitrator's and/or arbitration fees will be apportioned equally between the parties, and any disputes in that regard will be resolved by the Arbitrator." (Nakama Dec. Exhibit C, pg. 13, ¶ 18(j)).  "This Arbitration Provision applies regardless of whether the Company or Contractor is seeking monetary damages, temporary injunctive relief, or permanent injunctive relief." (*Id.* at pg. 11, ¶ 18(a)). "Unless the parties jointly agree otherwise, the Arbitrator shall be an attorney who is experienced in commercial law and licensed to practice law in the state of California, or a retired judge who presided in the state of California."  (*Id.* at pg. 12, ¶ 18(e).

The agreement also contained the following clause:

**23. ENGLISH VERSION CONTROLLING.** Contractor is exclusively responsible for obtaining whatever translation assistance Contractor deems advisable to assist Contractor in understanding the English version of this Agreement. Company may, but is not obligated to, provide Contractor with a translation of this Agreement in another language ("Translated Version"). Company makes no warranties as to the accuracy of the Translated Version. The parties agree that the English version of this Agreement shall be controlling if there is any difference between the English version and the Translated Version. The Translated Version shall be provided, if at all, for the convenience of Contractor only, and Contractor accepts exclusive responsibility for understanding and/or obtaining an accurately translated version of the English version of this Agreement. Also, Company may, but is not obligated to, make a translator available to assist Contractor in translating the English version of the Agreement. However, Company makes no warranties as to the accuracy of any translations made by such translators.

(Nakama Dec. Exhibit C, pg. 13, ¶ 19). The agreement required Plaintiff to deliver news paper entitled as USA Today, World Journal, New York Times, China Daily, Barrons, BANG TV, Financial Times, Korean Times, etc.  *Id.* at Exhibit C, pg. B2; Reyes Decl.

Plaintiff had no choice but to sign the independent dealer contract containing the release and arbitration provisions if he wanted to continue be employed by Defendant.  (Reyes Decl., ¶¶ 8-10).

Opposition to Defendant's Motion to Compel

Defendant refused to provide him with a Spanish version of the agreements despite his request. *Id.* at ¶¶ 13 & 31. Plaintiff's understanding of the terms was based on Defendant's representatives' interpretation. *Id.* at ¶ 15. The releases were never explained to Plaintiff and he did not know that he was giving up rights to sue Defendant in court for violations of California and federal law. *Id.* at ¶¶ 16-20. Defendant never informed him of the other lawsuits against Defendant. Plaintiff's son writes emails in English to Defendant. Reyes has never written an email in English to Defendant. (*Id.* at ¶ 29).

### III.     ARGUMENTS

Under federal law, arbitration is a matter of contract. *American Express Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304 (2013). Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "When deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

### A.     The FAA Exempts Transportation Workers such as Plaintiff from Arbitration.

"Transportation workers" are "workers actually engaged in the movement of goods in interstate commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112. The FAA exempts transportation workers from the FAA. 9 U.S.C. § 1. The United States Supreme Court held that the FAA's exemption for transportation workers applied to a driver whose employment agreement labeled him as an independent contractor. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019). Contrary to Defendant's contention, a court, rather than an arbitrator, decides whether the exemption in 9 U.S.C. § 1 applies before ordering arbitration. *New Prime,* 139 S. Ct. at 537-44 (rejecting employer's argument that a delegation clause can allow an arbitrator to decide whether the FAA transportation exemption applies). Courts have uniformly acknowledged that delivery drivers whose primary purpose is to physically transport interstate goods are transportation workers under § 1 of the FAA. *See Harden v. Roadway Package Sys. Inc.,* 249 F.3d 1137, 1140 (9th Cir. 2001).

4

According to the Ninth Circuit, transportation workers do not have to cross state lines to be engaged in interstate commerce for the exemption to apply. *Rittmann v. Amazon*, 971 F.3d 904, 909 (9th Cir. 2020). "The term 'in commerce' refers to interstate and foreign commerce – the type of commerce that Congress has the power to regulate." *Id.* at 914. In *Rittmann*, delivery drivers who delivered packages that crossed state lines were "transportation workers engaged in the movement of interstate commence and exempt from the FAA's application." *Id.* at 914. In rejecting Amazon's arguments that the drivers should not be exempt because the drivers contracted with Amazon only to make local deliveries, the Court stated the following:

> [u]ndoubtedly, a single act of carriage or transportation wholly within a state may be part of a continuous *interstate* carriage or transportation. Goods shipped from Albany to Philadelphia may be carried by the New York Central Railroad only within the limits of New York, and yet that service is in *interstate* carriage.' *Id. at 26*. That is precisely the case here. AmFlex *drivers'* transportation of goods wholly within a state are still a part of a continuous *interstate* transportation, and those *drivers* are engaged in *interstate commerce* for § 1's purposes…..
>
> Here, however, Amazon packages do not "come to rest," at Amazon warehouses, and thus the interstate transactions do not conclude at those warehouses. The packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys. The interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations, and thus AmFlex drivers are engaged in the movement of interstate commerce.

*Id.* at 915-16 (quoting *People of State of New York ex rel. Pennsylvania Railroad Co. v. Knight*, 192 U.S. 21, 26 (1904).

As the United States Supreme Court noted, "There can be little doubt today that the immediate dissemination of news gathered from throughout the nation or the world by agencies specially organized for that purpose is part of interstate commerce." *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951). (citing *Associated Press v. United States*, 326 U.S. 1, 14 (1945)). "The distribution within Lorain of the news and advertisements transmitted to Lorain in interstate commerce for the sole purpose of immediate and profitable reproduction and distribution to the reading public is an inseparable part of the flow of the interstate commerce involved." *Id.* at 151-52. Likewise, in *Page v. Work*, 290 F.2d 233 (9th

Cir. 1961), the Ninth Circuit found that "newspapers and Consolidated were engaged in interstate commerce by virtue of (1) their regular purchases of newsprint and other supplies from sources outside of California; (2) the dissemination of national news; (3) their carrying of national advertising; and (4) a few out-of-state subscribers." *Id.* at 328.

Here, the delivery of newspapers involve interstate commerce as Defendant's dissemination of the news is part of interstate commerce. Additionally, as a distributor or publisher for publications based in states outside of California and other countries worldwide, Hearst's admitted purpose is to sell and deliver these out-of-state goods to its in-state customers. Although Plaintiff does not cross state lines, Plaintiff is engaged in the movement of interstate commerce and/or closely related to interstate commerce and foreign commerce by delivering Defendant's advertisements printed from outside of California as well as magazines and newspapers. To the extent Defendant claims that all of its news papers such as the Wall Street Journal, China Daily, Korean Times are printed only in California, Plaintiff requests that he has an opportunity to conduct discovery and deposition on this issue before a final decision is made. Alternatively, Plaintiff's duties are closely related to interstate commerce that the exemption should apply as the content contained in the news papers and/or magazines are obtained from different states and/or countries and a strike by Plaintiff and other workers would significantly interrupt interstate commerce.

### B. The Release & Arbitration Provisions Do Not Cover Dealer Misclassification Piece-Rate Claims.

"Arbitrability" presents yet another insurmountable hurdle for Defendant's motions to compel arbitration or enforcement of the releases, as they have not and cannot show that the arbitration or release clause in the independent contractor agreements covers Plaintinff's misclassification statutory claims. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 US 643, 648 (1986) (internal quotes omitted). When determining whether an arbitration provision covered the asserted claims, courts frequently first assess whether the arbitration

Opposition to Defendant's Motion to Compel

provision is "broad" or "narrow." *See, e.g.*, *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921–922 (9th Cir. 2011); *Bono v. David*, 147 Cal. App. 4th 1055, 1067–68 (2007). *See also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 n.1 (2004).

The scope of the arbitration clause here — "All disputes over the terms of this Agreement"— is exceedingly narrow, both under a common sense reading and under well- established case law. The Ninth Circuit and California courts have repeatedly found arbitration provisions with similar provisions—such as provisions covering disputes "arising out of this agreement" or "arising hereunder"— to be "narrow," and thus only cover claims arising from the contract terms, even if such claims would not have arisen but for the parties' agreement. *See Cape Flattery Ltd.*, 647 F.3d at 921–924 ("[a]ny dispute arising under this agreement" was *not* broad enough to require arbitration of a related claim for violation of a federal statute); *Tracer Research Corp. v. Nat'l Envt'l Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (agreement to arbitrate "any controversy or claim arising out of this agreement" is more narrow than agreement to arbitrate claims related to the agreement and does not encompass tort or statutory claims, even if the "tort claim would not have arisen 'but for' the parties' licensing agreement"); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (finding clause with "arising hereunder" language "is intended to cover a much narrower scope of disputes than language that includes "relating" to a contract; , *i.e.,* only those relating to the interpretation and performance of the contract itself."); *Rice v. Downs*, 248 Cal. App. 4th 175, 180, 186-194 (2016) (clause providing for arbitration of any controversy "arising out of this agreement" was "narrow").

Particularly on point here is *Medical Staff of Doctors Medical Center in Modesto v. Kamil*, 132 Cal. App. 4th 679 (2005), where the court considered an arbitration clause that is nearly identical to the language used in the Agreements here. There the court held that a service contract between a medical group and an insurer that required arbitration of "any problem or dispute concerning the terms of this Agreement" was too narrow to cover the medical group's defamation suit against the insurer. *Id.* at 683-84. While there was a nexus between the parties' contract and the alleged defamatory

7

conduct, the claim was collateral to and thus not covered by the narrow arbitration clause. *Id.*; *see also Bono*, 147 Cal. App. 4th at 1067–68 (concluding a defamation claim was not subject to an arbitration clause in a land development agreement that was limited to disputes over "the construction and application of any provision of this Agreement"; court noted that such terminology was "much narrower" than broad arbitration clauses that use such "'related to' or 'arising from' terminology."). Similar to *Kamil,* the Court here should readily conclude that the scope of the Agreement's arbitration clause is narrow--indeed, it is narrower than the language in *Kaimil*--and thus confined to claims based on the contract terms.

The purposefully narrow arbitration or release provision here does not cover Plaintiff's statutory misclassification piece-rate claims, because such claims are not mentioned in the agreement and are not predicated, expressly or impliedly, upon violations of the Agreements, but arise independently as a result of Defendant's violations of state and federal wage and hour laws. The Ninth Circuit in *Narayan v. EGL, Inc*., 616 F.3d 895 (9th Cir. 2010) made clear, while interpreting the scope of a choice of law provision in an "independent contractor" agreement, that plaintiff's statutory wage and hour claims arising from their alleged misclassification as "independent contractors" turn on whether they are defendants' employees rather than on the agreements they had with defendants. *Id.*at 899. The Ninth Circuit rejected the argument that the mere relevance of the agreements was sufficient to trigger coverage. *Id.* "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." *Id.* As Judge Alsup succinctly explained, under *Narayan*, it is "the statute, not the contract, [that gives] rise to the claims." *Quinonez v. Empire Today, LLC,* No. C 10-02049 WHA, 2010 WL 4569873, at *3 (N.D. Cal. Nov. 4, 2010) ("The claims brought by plaintiff do not arise under the contract between the parties.").

Accordingly, several courts since *Narayan* have denied motions to compel arbitration in "independent contractor" misclassification cases, finding plaintiffs' statutory wage and hour claims

8

did not arise from or out of the agreements that labeled them independent contractors. *See, e.g., Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15, 23 (2012) (arbitration clause limited to "dispute[s that] arise[] with regard to [the agreement's] application or interpretation" did not cover claims brought under the Labor Code by a group of truck drivers who claimed they were misclassified as independent contractors); *Hoover v. Am. Income Life Ins. Co.*, 206 Cal. App. 4th 1193, 1208-09 (2012) (arriving at same result with regard to a provision requiring arbitration of disputes "arising out of or relating to this contract" and "all disputes, claims, questions and controversies of any kind or any nature arising out of or relating to this contract"). *See also Ronlake v. US-Reports, Inc.*, No. 11–cv–2009 LJO MJS, 2012 WL 39ba3614, at *4 (E.D. Cal. Feb. 6, 2012) (employee who was converted to non- employee "member" and required to sign agreement to adjudicate all claims arising under the "member" agreement in New York could bring Labor Code claims in California; status under the contract was not at issue, rather "[t]he question is whether in classifying Plaintiffs as nonemployees, Defendant has violated the [Labor Code]").

In *Bautista v. Juul Labs, Inc.*, 478 F. Supp. 3d 865, 873 (N.D. Cal. 2020), the court found a similar arbitration provision of an independent contractor agreement did not cover misclassification claims:

> Without question, Defendants could have drafted the arbitration provision to cover labor code misclassification causes of action by, for example, expressly providing for arbitration of disputes or claims arising out of, or related to, Plaintiffs' employment, or of all labor code claims. Instead, Defendants drafted a narrow clause that only covers "disputes over the terms of" the ICA, which, applying Ninth Circuit and California law, Plaintiffs' causes of action clearly are not.

Here, as is *Bautista*, the arbitration provision does not cite the California Labor Code, Misclassification or Piece-rate claims as being covered. Damages for misclassification of a California's Piece-rate employee include mandatory payment for an employee's nonproductive and recovery periods. The Piece-rate statute was passed in California in 2016 to protect individual such as plaintiff. Furthermore, Defendant was fully aware of piece-rate litigation since it faced similar claims from other employees at the time of signing. Defendant could have easily included the case

9

name of the pending piece-rate litigation (*Martel v. Hearst*) or listed misclassification, paystub violations, failure pay non-productive time or piece-rate as claims to be arbitrated or stated the arbitration provision applied to all employment California Labor Code violations. From the face of the agreement, a reasonable interpretation is that these claims were purposefully excluded from the agreement and not subject to arbitration. As in *Narayan* and its progeny, a workers statutory wage and hour claims here do not arise from the terms of the Agreement but rather from whether they served as Defendant's employees under the statutes they allege Defendant violated. The Agreement's arbitration or release clause thus does not cover the claims here. To the extent the agreement applies to the FLSA, Plaintiff requests that the Court permit Plaintiff to amend the Complaint and remove the FLSA claims and to allege jurisdiction via diversity.

### C. The Arbitration Agreement was Unconscionable.

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." CAL. CIV. PROC. CODE § 1670.5(a). Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 113 (2004). A contract of adhesion "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id*. Unconscionability has both procedural and substantive elements. *Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 702 (2013).

#### 1. The Arbitration Agreement was Procedurally Unconscionable.

An agreement is procedurally unconscionable when it is based on "oppression" and "surprise" that results from unequal bargaining strength between the parties. *Armendariz v. Foundation Health Psychcare*, 24 Cal. 4th 83, 114 (2000). "Oppression" arises from an inequality of bargaining power which involves lack of negotiation and the absence of meaningful choice. *Pinnacle Museum Tower*

10

Opposition to Defendant's Motion to Compel

*Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (2012). "Surprise" refers to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Perez v. Maid Brigade*, No. C 07-3473 SI, 2007 WL 2990368, *5 (N.D. Cal. Oct. 11, 2007) (citation omitted). An arbitration agreement procedurally is unconscionable when it is a "take it or leave it" prerequisite to employment, and job applicants could not modify the agreement's terms. *Circuit City Stores, Inc. v. Adams* (9th Cir. 2002) 279 F.3d 889, 893.

### a. Defendant's Release Provision is Oppressive

The oppression element of the procedural unconscionability analysis is "nearly always established" where, as here, the contract is "one of adhesion." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996-97 (9th Cir. 2010) ("[T]he "oppressive behavior [of imposing an adhesion contract] is the quintessential characteristic of a procedurally unconscionable agreement"); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). ("[W]hen a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and, therefore, procedural unconscionability, are present"); *Armendariz*, 24 Cal.4th at 113. *See also Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2003) (finding procedural unconscionability where arbitration agreement was a contract of adhesion that could not be modified and was required for employment); *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1247 (2011) (finding procedural unconscionability because, among other factors, "[n]o one described the agreement's contents and plaintiffs were given but a few minutes to review and sign it, without any time to ask questions."). Defendant was patently in a superior bargaining position to the Dealers like Plaintiff. As a condition of employment, Defendant presented to every person who wished to work for Defendant a pre-printed, fill-in-the-blank independent contractor agreement, a "take-it-or-leave-it standardized employment form." *Lou v. Ma Labs., Inc.*, No. 12-CV-05409 WHA, 2013 WL 2156316, at *2 (N.D. Cal. May 17, 2013). Defendant cannot contend—and should make no attempt to show-- that the release, indemnity and/or other clauses were negotiable.

Contract are undoubtedly coercive because Defendants threatens to not renew Plaintiff's employment contracts for refusing to sign. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010), vacated on other grounds by *Chinese Daily News, Inc. v. Wang*, 565 U.S. 801 (201]) (affirming district court's decision to invalidate class member opt outs after the defendant had "terminat[ed] an employee supporting the litigation"); *Guifu Liv. A Perfect Day Franchise, Inc.,* 270 F.R.D. 509, 513, 518 (N.D. Cal. 2010) (invalidating class member opt-out forms "obtained through coercion" where, for example, one declarant was terminated "soon after refusing to sign the form," and two others "signed the form even though they did not want to"); *Giles v. Si. Charles Health Sys., Inc.* 980 F. Supp 2d 1123, 1226-27 (D. Or. 2013) (enjoining further communications with employees where "[a]t least one employee reported that she [wa]s 'worried [defendant] will retaliate against me' for refusing to sign the Release and/or participating in this law suit"); *In re ML Stern Overtime Litig.* 250 F.R.D. 492, 500 (S.D. Cal. 2008) (finding that the defendant's statement to employees that the lawsuit could cause the company to go bankrupt was coercive); *Camp v. Alexander*, 300 F.R.D.617, 625 (N.D. Cal. 2014) (statement that the company "would close and employees would lose their jobs if the litigation proceeded" was "highly inflammatory" and coercive).

Defendant required non-English speaking employees and other employees to sign agreements containing releases, waiver of rights, and arbitration agreements if they wanted to continue to work for Defendant. Courts have readily found procedural unconscionability in similar circumstances. *Marcos v. Koreana Plaza Mkt. Oakland, Inc.*, No. C- 06-07682 RMW, 2007 WL 1771533, at *3 (N.D. Cal. June 18, 2007) ("[b]ecause the evidence is undisputed that plaintiffs' understanding of English is at best limited, the agreement was procedurally unconscionable as there is substantial risk that plaintiffs did not understand what it was they were signing."); *Carmona v. Lincoln Millenium Car Wash, Inc.*, 226 Cal. App. 4th 74, 81 (2014) (finding company's failure to translate clause into Spanish elevated case to "high degree" of procedural unconscionability); *Samaniego v. Empire Today LLC,* 205 Cal. App. 4th 1138, 1146 (2012) (arbitration provision was procedurally unconscionable where the workers did not speak English as a first language and had limited or no literacy in English).

In *Magno v. College Network, Inc.,* 1 Cal.App.5th 277, 285 (2016), the court ruled that an arbitration agreement signed by college students was procedurally unconscionable when it was "buried on the back page of the preprinted carbon paper forms", the students were rushed through the signing process, and the students had no ability to negotiate. Likewise, an "arbitration agreement that is an essential part of a 'take it or leave' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 114 (2004).

In addition to being forced to sign a contract of adhesion, Plaintiff was not provided complete information about what they were signing and were not provided the document in Spanish. Further, Defendants were aware of other cases and misled Plaintiff. To the contrary, Plaintiff relied upon the oral representations of Defendant's representatives regarding the Agreement. Defendant's representatives, in turn, wholly omitted any mention of the arbitration clause and releases of rights when purportedly reviewing the terms of the agreement. The "surprise" element of procedural unconscionability "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 1519, 1532 (1997). The arbitration provision – set out in the Agreement – was hidden in the adhesion contract as "General Provisions" that apply to "contractors" not employees, inconspicuous, not bolded or otherwise set apart from the rest of the text, and not on a page requiring a signature. Courts have found such arbitration provisions to be procedurally unconscionable. *See Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013) (finding procedural unconscionability where the arbitration clause was not highlighted or outlined, and did not require a separate signature), *aff'd*, 601 F. App'x. 461 (2014); *Lau v. Mercedes-Benz USA, LLC*, No. 11-CV-1940 MEJ, 2012 WL 370557, at *8 (N.D. Cal. Jan. 31, 2012) (finding procedural unconscionability where arbitration clause was "imbedded inconspicuously" within the document and not on a page requiring a signature).

    **2.**    **The Arbitration Agreement is Substantially Unconscionable.**

13

Under California contract law, provisions are substantively unconscionable when they create overly harsh or one-sided results, or lack a necessary "modicum of bilaterality." *Pokorny*, 601 F.3d at 998; *Armendariz,* 24 Cal.4th at 117. "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Magno v. College Network, Inc.,* 1 Cal.App.5th 277, 284 (2016). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should with enforcement." *Id.* at 912. Here, Plaintiff was made to agree to a broad hold-harmless/indemnity provision that, if enforced, would waive their Labor Code protections.

Application of the Fee Shifting Provision would serve as an unlawful waiver of Plaintiff's substantive rights. For example, the arbitration clause contains an apportionment clause that states, "The Arbitrator's and/or arbitration fees will be apportioned equally between the parties, and any disputes in that regard will be resolved by the Arbitrator." (Nakama Decl., Exhibit C, ¶18(j)). As the California Supreme Court noted, this fee shifting provision is unenforceable because an employer must pay the entire cost of arbitration except costs an employee would necessarily pay in a court proceeding. *Armendariz v. Foundation Health Psychcare*, 24 Cal. 4th 83, 110-113 (2000).

The application of the Hold "Indemnity," and "Employee Benefits" waiver and "flow down" provisions serve to waive Plaintiff's statutory rights. In addition to the invalid release of all claims against Defendant, the "Indemnification" and "flowdown" section of the Agreements also contain indemnity provisions, which purport to make Plaintiff financially responsible for all of Defendant's liabilities arising from Plaintiff's negligence, as well as "omission," arising from their work under the Agreement, including "attorneys' fees." (Nakama Decl., Exhibit A, ¶ 13; Nakama Decl., Exhibit B, ¶ 13; Nakama Decl., Exhibit C, ¶ 13). These clauses conflicts with the work-related protections of Labor Code section 2802, which requires the employer to indemnify "for all necessary expenditures of losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, work-related expenses, including losses resulting from the employees' negligence." The financial protections Section 2802 affords employees

14

from work- related losses are non-negotiable and cannot be waived. *Desimone v. Allstate Ins. Co.,* No. C 96- 036606 CW, 1999 WL 33226248, at *9 (N.D. Cal. Sept. 14, 1999); *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 951-52 (2008). In *Arthur Anderson*, the California Supreme Court noted: "Therefore, the waiver of 'any and all' claims would not encompass the right to indemnification, because we treat the [release] as expressly incorporating the law that the employee cannot waive that right." *Arthur Anderson*, 44 Cal.4th 937 at 955. The arbitration agreement, clause 18(b) also unlawfully attempts to give an arbitrator the right to determine workers compensation and unemployment benefits. The release is one sided as Defendant did not release any claims.

### D. The Arbitration Agreement does not meet the *Armenariz* Standard.

The California Supreme Court set forth the necessary terms for an enforceable arbitration agreement: (1) provides for more than minimal discovery; (2) provides for neutral arbitrators; (3) provides for all types of relief that would otherwise be available in court; and (4) does not require litigants to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum; and (5) requires a written award. *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 102 (2000). The arbitration clause fails to satisfy the requirements. The arbitration clause states that the arbitration fees must be split equally among the parties. The fee shifting provision is unenforceable because an employer must pay the entire cost of arbitration except costs an employee would necessarily pay in a court proceeding. *Armendariz v. Foundation Health Psychcare*, 24 Cal. 4th 83, 110-113 (2000). Further, the arbitration agreements fails because it requires that the arbitrator specialize in commercial law and not, employment law, which would unfairly disadvantage Plaintiff.

### IV. CONCLUSION

Plaintiff respectfully request that the Court deny Defendant's motion.

**Dated:** July 21, 2021

By: _____
Scott S. Nakama, Esq.

15