**SEYFARTH SHAW LLP**
Camille Olson (SBN 111919)
colson@seyfarth.com
Richard B. Lapp (SBN 271052)
rlapp@seyfarth.com
Parnian Vafaeenia (SBN 316736)
pvafaeenia@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

**SEYFARTH SHAW LLP**
Andrew R. Cockroft (*pro hac vice*)
acockroft@seyfarth.com
233 S. Wacker Dr. Suite 8000
Chicago, Illinois 60606
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

Attorneys for Defendant
HEARST COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL REYES,<br><br>            Plaintiff,<br><br>   v.<br><br>HEARST COMMUNICATIONS, INC.; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 3:21-cv-03362-AGT<br><br>**HEARST COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Date:    August 12, 2021<br>Time:    1:30 p.m.<br>Courtroom: 3<br>Hon. Judge Phyllis J. Hamilton |

HEARST COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION AND STAY CASE

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................... 1

II.    BACKGROUND .................................................................................................................. 2

    A.    Reyes' Negotiations With Hearst. ........................................................................... 2

    B.    The Nature of Reyes' Work As a Dealer ................................................................ 2

III.    ARGUMENT ....................................................................................................................... 3

    A.    Arbitration Must Be Compelled Pursuant To The California Arbitration Act. .................. 3

    B.    Reyes' Attacks On The Enforceability And Scope Of The Agreement Must Be Resolved By The Arbitrator. ........................................................................................ 4

    C.    Regardless, Reyes' Attacks Are Without Merit. ........................................................ 5

        1.    The Agreement Covers The Instant Dispute. ............................................... 5

        2.    The Agreement is Not Procedurally Unconscionable. ................................. 5

            a.    The Agreement Is Not A Contract Of Adhesion. .......................... 5

            b.    Reyes' Arguments Regarding His Limitations With The English Language Are Misleading And Do Not Invalidate The Agreement. .......... 6

        3.    The Agreement Is Not Substantively Unconscionable. ............................... 6

        4.    The Arbitration Agreement Meets the *Armendariz* Requirements ........................ 8

    D.    The "Transportation Worker" Exemption Does Not Apply To Reyes. .............................. 8

        1.    Reyes Is Not A "Worker" Within The Meaning Of § 1 Of The FAA. ................... 9

        2.    Reyes Has Alleged Facts Inconsistent With A Finding That He Is A "Transportation Worker" Under *Rittman v. Amazon.com*. ...................... 9

IV.    CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*CarMax Auto Superstores California LLC v. Hernandez*,
  94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...................................................................................3

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)................................................................................................................8

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)............................................................................................................6

*Longaker v. Bos. Sci. Corp.*,
  No. 5:11-CV-01827 JF PSG, 2011 WL 8609955 (N.D. Cal. Sept. 19, 2011)........................5

*Lorain J. Co. v. United States*,
  342 U.S. 143 (1951)..............................................................................................................10

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ................................................................................................4

*Mohebbi v. Khazen*,
  No. 13-cv-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ....................................6

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ................................................................................................7

*New Prime Inc. v. Oliveira*,
  139 S. Ct. 532 (2019)..............................................................................................................9

*Nicholas v. Uber Techs., Inc.*,
  No. 19-CV-08228-PJH, 2020 WL 4039382 (N.D. Cal. July 17, 2020) (Hamilton, J.) .........4

*Page v. Work*,
  290 F.2d 323 (9th Cir. 1961) ................................................................................................10

*Poponin v. Virtual Pro, Inc.*,
  No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) (Hamilton, J.) .............6

*R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*,
  447 F. Supp. 3d 339 (W.D. Pa. 2020).....................................................................................9

*Rent-A-Ctr.*,
  561 U.S. 72 ............................................................................................................................4

*Rittman v. Amazon.com,*
  971 F.3d 904, 915 (9th Cir. 2020) ........................................................................................10

*Sanchez v. Hearst Communications, Inc.*,
   3:20-cv-5147 (N.D. Cal.) (Chhabria, J.) ..............................................................................1

*TradeHill, Inc. v. Dwolla, Inc.*,
   2012 WL 1622668 (N.D. Cal. May 9, 2012) ......................................................................7

*United States v. Singulex, Inc.*,
   No. 4:16-CV-05241-KAW, 2019 WL 1472307 (N.D. Cal. Apr. 3, 2019) ..........................8

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ..................................................................................................3, 4, 8

*Cione v. Foresters Equity Servs., Inc.*,
   58 Cal. App. 4th 625 (1997) ................................................................................................3

*Div. of Labor Law Enforcement v. Transpacific Trans. Co.*,
   69 Cal. App. 3d 268, 274-75 (1977 .....................................................................................3

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937, 189 P.3d 285 (2008) ..................................................................................7

*Garrido v. Air Liquide Indus. U.S. LP*,
   241 Cal. App. 4th 833, 194 Cal. Rptr. 3d 297 (2015) ..........................................................3

*Moncharsh v. Heily & Blasé*,
   3 Cal. 4th 1 (1992) ...............................................................................................................3

*Performance Team Freight Sys., Inc. v. Aleman*,
   241 Cal. App. 4th 1233 (Ct. App. 2015)...............................................................................9

*Ruiz v. Sysco Food Servs.*,
   122 Cal. App. 4th 520, 18 Cal. Rptr. 3d 700 (2004)............................................................3

*Tiri v. Lucky Chances, Inc.*,
   226 Cal. App. 4th 231, 171 Cal. Rptr. 3d 621 (2014) .........................................................4

**Federal Statutes**

9 U.S.C. § 1..............................................................................................................1, 8, 9, 10

Federal Arbitration Act ...............................................................................................................1

Sherman Antitrust Act ..............................................................................................................10

**State Statutes**

Cal Civ. Proc. Code § 1284.2 .....................................................................................................7

Cal. Code Regs. Title 22, § 4304-6(c)(1).....................................................................................7

iii

California Arbitration Act ................................................................................................................ 1, 3, 4, 8

Labor Code § 2802 ........................................................................................................................... 7

Labor Code § 2804 ........................................................................................................................... 7

## I. INTRODUCTION

Plaintiff Reyes' Opposition primarily argues that he is exempt from the Federal Arbitration Act because he is "transportation worker" under 9 U.S.C. § 1. (*See* Opp. at 4-6.)[1] Reyes' Opposition, however, fails to address the California Arbitration Act ("CAA"), which provides an independent basis to compel arbitration irrespective of the FAA's exception. (*See* Mot. at 1, 4.) On that basis alone, Hearst's motion should be granted. Regardless, even under the FAA, arbitration should be compelled. Reyes' testimony forecloses any application of the "transportation worker" exemption to his contract. And in any event, the evidence shows that Reyes is not a "worker" within the meaning of the exemption.

Notwithstanding his Agreement to arbitrate, Reyes argues that his claims are not covered by the Agreement and that the Agreement is unconscionable. But those issues are to be decided by the arbitrator because the Agreement contains a broad delegation clause giving the arbitrator the power and authority to decide those issues. (*See* Mot. at 5-7.) The Opposition does not contest the delegation provision in the Agreement. Thus, under settled law, the arbitrator has sole jurisdiction to decide all challenges Reyes raises here.

But regardless of the forum, judicial or arbitral, it is plain that Reyes' challenges are without merit. First, notwithstanding Reyes' contentions, the Agreement clearly covers the instant dispute. (*See* Lawson Decl. Ex. A ¶ 18 (stating that the Agreement applies to "any dispute, past, present or future, arising out of or in connection with this Agreement" as well as any claim "based upon or related to . . . unfair competition, wages or other compensation, breaks and rest periods, termination, tort claims, equitable claims, and all other statutory and common law.")) Second, Reyes' Agreement was not procedurally unconscionable. It was not a "take it or leave it agreement." Reyes is an experienced negotiator, he had ample time to negotiate his agreements, and he has, in fact, negotiated new terms for his agreements. Reyes' attempt to avoid the Agreement because he is supposedly not fluent in the English language is disingenuous; the evidence shows that he is fully capable of understanding and

---

[1] Almost immediately after Plaintiff Reyes filed this suit, he filed two motions in another matter pending in this District Court, but in which he is not a party: *Sanchez v. Hearst Communications, Inc.*, 3:20-cv-5147 (N.D. Cal.) (Chhabria, J.) There, Reyes has filed a motion to intervene and also a motion seeking to invalidate a previous release agreement he signed with Hearst and briefing on those motions is complete. (*See* Declaration of Richard Lapp II ("Lapp II Decl.").)

negotiating the terms of his agreements in English, and has done so for years, and has his own interpreter. Reyes' claims of substantive unconscionability also miss the mark. They either misunderstand the Agreement or the law or depend on a finding that Reyes is an employee (which is premature).

## II.     BACKGROUND

### A.     Reyes' Negotiations With Hearst.

Hearst negotiates independent contractor agreements with newspaper dealers. (*See* Declaration of Roberto Munoz ("Munoz Decl.") ¶¶ 4-7.) Terms like rates, delivery area, and the like are all subject to negotiation by newspaper dealers and Hearst. (*See id*. ¶ 8.) Generally, the agreements are initialed by the newspaper dealer on each and every page before becoming effective. (*See id*. ¶ 9.)

Reyes has contracted with Hearst to perform services as a newspaper dealer for several years. (*See id*. ¶ 11.) In that time, he has negotiated many independent contractor agreements. (*See id*. ¶ 12.) Throughout his time as a newspaper dealer, Reyes has, on his own, asked to take on additional delivery areas in order to expand his business under new agreements. (*See id*. ¶¶ 14-15, 17.) As of today, Reyes has negotiated delivery areas that cover approximately 1,620 daily newspaper deliveries and 3,184 Sunday deliveries. (*See id*. ¶ 16.) Reyes has negotiated each of his agreements with Hearst. (*See id*. ¶¶ 12-13.) Reyes routinely communicates with Hearst and subscribers in English. (*See id*. ¶¶ 18-19, *see also id.* Exs. C-F.) Until June 2021, Reyes has never requested a Spanish version of any agreement. (*See id*. ¶ 21.)

### B.     The Nature of Reyes' Work As a Dealer

In contrast to a newspaper carrier, who may physically deliver newspapers, Reyes is a newspaper dealer. (*See* Compl. ¶ 8.) As a dealer, Reyes' Agreement sets forth a geographically large Delivery Area, and, therefore, contemplates Reyes' engagement of other workers to perform the work of actually delivering papers. (*See* Lawson Decl. Ex. A at Schedule A.) The Agreement is not a personal services contract. Because it is entirely focused on results, the Agreement makes clear that Reyes does not need to accomplish those results himself. (*See* Lawson Decl. Ex. A ¶¶ 4(a) ("Company is concerned only with the results set forth in this Agreement. . . ."), 4(d) (explaining Reyes is free to have others perform part or all of the obligations in the Agreement), 5.) Indeed, the Agreement contemplates that third-

2
HEARST COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION AND STAY CASE

parties will complete these tasks. (*See*, *e.g.*, *id.* ¶ 19 ("Contractor agrees that it will insert language into all of its contracts with all of its respective Employees and Subcontractors . . .")

### III. ARGUMENT

#### A. Arbitration Must Be Compelled Pursuant To The California Arbitration Act.

Separate and apart from the FAA, the California Arbitration Act ("CAA") provides an independent basis for compelling arbitration here. (*See* Mot. at 1, 4; *see also CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1102 (C.D. Cal. 2015) ("Even if the FAA did not apply, [Plaintiffs] fail[] to identify the effect on the arbitrability analysis if the California Arbitration Act ("CAA"), rather than the FAA applied…[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts.") (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (2000)). "California law, like federal law, favors enforcement of valid arbitration agreements." *Moncharsh v. Heily & Blasé*, 3 Cal. 4th 1, 9 (1992); *see also Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997) ("a heavy presumption weighs the scales in favor of arbitrability"). Yet, the Opposition does not address the CAA. The Court, then, can grant Hearst's motion solely on the basis of the CAA.

The Court need not even reach the FAA-based arguments to grant Hearst's motion. "Nothing in the CAA . . . requires that an arbitration agreement explicitly reference the CAA to be enforceable under California law." *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 841, 194 Cal. Rptr. 3d 297, 303 (2015) (considering agreement that "[a]ccording to its terms, the agreement, and any arbitration proceedings, are governed by the FAA," finding that the "transportation worker" exemption applied to the plaintiff, but nonetheless compelling arbitration under the CAA); *see also Ruiz v. Sysco Food Servs.*, 122 Cal. App. 4th 520, 538, 18 Cal. Rptr. 3d 700, 713 (2004) (compelling arbitration under the CAA and avoiding consideration of whether the plaintiff met the "transportation worker" exemption.).

Here, it is undisputed that, pursuant to the CAA, there is a valid agreement to arbitrate. Under California law, a contract is valid if there is "mutual assent" between the parties and "consideration." *Div. of Labor Law Enforcement v. Transpacific Trans. Co.,* 69 Cal. App. 3d 268, 274-75 (1977). Both Plaintiff and Hearst agreed that disputes like those alleged in the Complaint must be resolved through

arbitration. (*See* Lawson Decl. Ex. A ¶ 18.) The parties' mutual promises to arbitrate all such disputes establishes the requisite consideration. *See*, *e.g.*, *Armendariz*, 24 Cal. 4th at 118. Accordingly, the Agreement is valid under the CAA and the Court should compel arbitration.

### B. Reyes' Attacks On The Enforceability And Scope Of The Agreement Must Be Resolved By The Arbitrator.

Reyes contends that the instant dispute is not covered by his Agreement. He also argues the Agreement is unconscionable. Setting aside the merits of his contentions, the Agreement provides that the arbitrator decide these issues. Because Reyes does not specifically question the validity and enforceability of the Agreement's delegation clause (*see* Opp. 6-15.), his challenges must be decided by the arbitrator.

Precedent is clear and uniform: when an agreement to arbitrate contains a clause delegating interpretative and enforcement authority to the arbitrator, a broad challenge to the enforceability or validity of the agreement will not suffice as a challenge to the delegation clause. *See Rent-A-Ctr.*, 561 U.S. 72 ("Accordingly, unless [a plaintiff] challenge[s] the delegation provision specifically, [the Court] must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 241, 171 Cal. Rptr. 3d 621, 628 (2014) ("Although *Rent-A-Center* was decided under the FAA, we agree with Lucky Chances that its holding applies under the CAA as well."); *Nicholas v. Uber Techs., Inc.*, No. 19-CV-08228-PJH, 2020 WL 4039382, at *7 (N.D. Cal. July 17, 2020) (Hamilton, J.)[2]

The Opposition fails to even mention the delegation provision, much less explain why it, specifically, is unenforceable or otherwise invalid. Instead, the Opposition merely asserts various attacks on the Agreements as a whole. (*See* Opp. at 6-15.) Accordingly, the Court must compel

---

[2] *See id.* ("The core of plaintiffs' procedural conscionability attack is that "[t]he 2015 and 2019 Agreements' arbitration provisions were non-negotiable as it applied to Plaintiffs ... because of the gross inequality of bargaining power between UBER and its ride-share drivers. . . . The core of plaintiff's substantive conscionability attack is that defendant's use of 'contractual tricks' to obtain plaintiffs' 'consent' to arbitrate their claims is 'the epitome of one-sided.' Neither of these attacks criticize the conscionability of the arbitration provisions' delegation clause specifically. . . . Accordingly . . . the court orders that all questions concerning the arbitrability of the claims in this action—including those concerning the arbitration provisions' conscionability—be determined by the arbitrator.") (citations omitted)

arbitration regardless of Reyes' attacks on the Agreement as a whole. *Id.*

### C. Regardless, Reyes' Attacks Are Without Merit.

#### 1. The Agreement Covers The Instant Dispute.

Reyes argues that the Agreement does not cover the instant dispute. (Opp. at 6-10.) That is just wrong. The Agreement expressly includes the specific claims Plaintiff brings here, including his "misclassification" claim, and contains broad language to include any claim Reyes may pursue. *See* Lawson Decl. Ex. A ¶ 18 (stating that the Agreement applies to "any dispute, past, present or future, arising out of or in connection with this Agreement" as well as any claim "based upon or related to . . . unfair competition, wages or other compensation, breaks and rest periods, termination, tort claims, equitable claims, and all other statutory and common law.") Reyes' attempt to avoid the Agreement's scope is baseless.

#### 2. The Agreement is Not Procedurally Unconscionable.

##### a. The Agreement Is Not A Contract Of Adhesion.

Reyes had ample opportunity to review and negotiate the terms of his Agreement. (*See* Munoz Decl. ¶ 13.) Terms like rates, delivery area, and the like are all subject to negotiation and are negotiated by newspaper dealers. (*See id.* ¶ 8.) Reyes, in fact, has negotiated new terms of his agreements including additional compensation. (*See id.* ¶¶ 13-17 & Exs. A-D.) Reyes, moreover, initialed each page of his Agreement, signifying that he was made aware of each provision of the Agreement. (*See id.* ¶ 9; *see also generally* Lawson Decl. Ex. A). The Agreement, itself states in bold, just above the signature line, that Reyes (1) read and understood the entire agreement, (2) was afforded the opportunity to have the agreement reviewed by counsel, and (3) acknowledges that Hearst was willing to negotiate the provisions in the agreement. (*See* Lawson Decl. Ex. A at 14.)

Reyes has negotiated and signed many agreements with Hearst over many years. (*See* Munoz Decl. ¶¶ 12-13.) Likewise, Reyes has requested, on his own, to take on new delivery areas that necessitated new independent contractor agreements and has even voluntarily sought the opportunity to enter into new agreements with Hearst. (*See id.* ¶¶ 14-17 & Exs. A-D.) Because Reyes is an experienced negotiator, the Agreement cannot reasonably be understood as adhesive. *See Longaker v. Bos. Sci. Corp.*, No. 5:11-CV-01827 JF PSG, 2011 WL 8609955, at *4 (N.D. Cal. Sept. 19, 2011)

("[W]here as here the contracting parties are experienced in business affairs, there is less concern about contracts of adhesion.") But regardless, an agreement to arbitrate is valid even if it is offered as a condition of continued work. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).

### b. Reyes' Arguments Regarding His Limitations With The English Language Are Misleading And Do Not Invalidate The Agreement.

Reyes implies that because his first language is not English, that somehow makes his Agreement unenforceable. This is both disingenuous and irrelevant. Reyes has negotiated many contracts and addenda and has never asked for a Spanish version of an independent contractor agreement - until after he filed this suit. (*See* Munoz Decl. ¶ 21.) Multiple documents, moreover, demonstrate his facility with the English language, sufficient to function effectively as a small business. For example, Reyes has communicated with Hearst in English requesting additional compensation under his contract:

> Thank you. Just to reiterate my stance, I am not looking for a new contract re rates but merely looking to get fairly compensated (i.e. gas cards for my employees and I) for the increased gas prices. I don't want you to put in the time drafting a proposal that will not be strictly base on compensation for gas. If this can't be done, we can squash this matter. Hope you understand where I'm coming from.

(*See id*. ¶ 17 & Ex. D; *see also id.* Exs. C, E-F.) Reyes' prior business communications defy his newly claimed inability to transact business in the English language. While Reyes now says his son writes his email communications with Hearst, (*see* ECF No. 23-4 ¶ 29), that is of no moment, and only makes it clear that he had no need for a translator or a Spanish version of any agreement: he was working with and utilizing his own translator on a regular basis.

Under these circumstances, Courts in the Ninth Circuit have uniformly enforced the arbitration agreements. *See*, *e.g.*, *Mohebbi v. Khazen*, No. 13-cv-03044-BLF, 2014 WL 6845477, at *5 (N.D. Cal. Dec. 4, 2014) (compelling arbitration because a "party cannot avoid the terms of an agreement he signs on the ground that he did not understand the language in which the contract was written").[3] Accordingly, Reyes' arguments regarding his difficulties with English should be rejected.

### 3. The Agreement Is Not Substantively Unconscionable.

Reyes' challenges here also miss the mark. First, the so-called "fee-shifting provision" in the

---

[3] *See also Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006 WL 2691418, at *10 (N.D. Cal. Sept. 20, 2006) (Hamilton, J.) (compelling arbitration and concluding that "[plaintiff's] limited facility with English did not make him a 'weaker party' for purposes of this analysis. He could have asked a third party to assist him with his English.")

agreement he complains of, (*see* Opp. at 14), is not fee-shifting, but fee-splitting. (*See* Lawson Decl. Ex. A ¶ 18(j).) It is, therefore, not unconscionable. The "default rule under California law is that the parties must split the fees of the arbitrator on a pro rata basis." *TradeHill, Inc. v. Dwolla, Inc.*, 2012 WL 1622668, at *4 (N.D. Cal. May 9, 2012) (emphasis added); *see also* Cal Civ. Proc. Code § 1284.2 ("Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006) ("[T]he fee-splitting provision is not per se substantively unconscionable under California law.")

Second, the indemnity, employee benefits, and flow down provisions do not render the Agreement invalid. (*See* Opp. at 14-15.) The Opposition argues that since the provisions "also contain indemnity provisions," the clauses "conflict[] with the work-related protections of Labor Code section 2802." (*See id.*) This does not implicate the agreement to arbitrate. Indeed, the authority cited in the Opposition holds that an improper waiver of a right to indemnify an employer does not otherwise invalidate an agreement. *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 955, 189 P.3d 285, 297 (2008) ("We conclude that a contract provision releasing 'any and all' claims does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802 and, accordingly, is not void under Labor Code section 2804."). Moreover, these arguments are contingent on a finding of employment status, which, of course, is a contested issue.[4]

Last and least, any unconscionable provision (there is none) would not prevent the enforceability of the arbitration provision because any offending clause can be addressed by the agreement's severability clause. (*See* Lawson Decl. Ex. A ¶ 22); *see also United States v. Singulex, Inc.*, No. 4:16-CV-05241-KAW, 2019 WL 1472307, at *7 (N.D. Cal. Apr. 3, 2019) ("[T]he arbitration

---

[4] Hearst notes that the California Employment Development Department Regulations regarding the newspaper distribution industry provide that a provision in an independent contractor agreement holding the principal harmless is evidence of independence and weighs against finding the individual is an employee. *See* Cal. Code Regs. tit. 22, § 4304-6(c)(1) ("A provision by which the carrier holds the principal harmless from liability shall be evidence of independence.")

agreement has a severability clause, allowing the Court to sever the unconscionable fee-shifting provision and enforce the remainder of the agreement.").

### 4. The Arbitration Agreement Meets the *Armendariz* Requirements

The Agreement is enforceable under California law because it includes basic procedural and remedial protections such that a claimant may effectively pursue statutory rights. *See Armendariz*, 24 Cal. 4th at 96-97. Reyes fails to explain why the Agreement does not satisfy the minimum requirements for "essential fairness" under *Armendariz*. (*See* Mot. at 8.) The only arguments advanced by Reyes simply misread the Agreement: there is no fee-shifting provision and if Reyes disagrees with Hearst's choice of arbitrator, that dispute can be resolved by the AAA or a court. (*See* Lawson Dec. Ex. A ¶ 18(e).)[5] Thus, Reyes has not shown that this Agreement is not enforceable under California law and should be compelled to arbitration.

### D. The "Transportation Worker" Exemption Does Not Apply To Reyes.

As explained above, the Court need not reach Reyes' arguments regarding the FAA because he has in effect conceded that this case must be compelled to arbitration under the CAA. (*See supra* Sec. III.A).[6] Nevertheless, Reyes cannot demonstrate that he is exempted from the FAA.

Section 1 of the FAA states that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are not covered by the FAA. 9 U.S.C. § 1 (emphasis added). This provision is narrowly interpreted as exempting "contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, (2001). Reyes bears the burden of demonstrating that the FAA's narrow transportation worker exemption applies. *See Performance Team Freight Sys., Inc. v. Aleman*, 241 Cal. App. 4th 1233, 1241 (Ct. App. 2015).

---

[5] Moreover, Reyes is an experienced negotiator and created a business to contract with Hearst, (*see supra* Sec. III.C.2.a), whereas *Armendariz* was concerned with economic pressure from unequal bargaining power between employers and employees. *See Armendariz*, 24 Cal. 4th at 115. There is no economic pressure here; Reyes has negotiated and terminated agreements on his own for years. (*See* Munoz Decl. ¶¶ 14-17 & Exs. A-D.)

[6] Because arbitration should be compelled under the CAA, the Court does not need to consider Reyes' request for discovery related to the "transportation worker" exception. (*See* Opp. at 6.) Also, because Reyes' allegations are inconsistent with a finding that he is a "transportation worker" engaged in the channels of interstate commerce, (*see supra* Sec. III.D.2.), discovery on such allegations is unnecessary.

### 1. Reyes Is Not A "Worker" Within The Meaning Of § 1 Of The FAA.

While *New Prime Inc. v. Oliveira,* 139 S. Ct. 532, 535 (2019) clarified that "contracts of employment" within the meaning of Section 1 of the FAA may include "independent contractors," (*see* Opp. at 4), it did not hold that all "independent contractors" have "employment" contracts within the meaning of the FAA. *See* 139 S. Ct. at 544. Here, *R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339 (W.D. Pa. 2020) is instructive. In that case, the court rejected an "independent contractor's" effort to avoid arbitration, reasoning the contractor there was in fact was a small business and not a "worker" subject to a "contract of employment" as explained in *New Prime*. The court explained the plaintiff small business was not a "worker" because

> the Agreement made no specific designation as to which particular driver associated with R & C would actually perform the work under the Agreement. That was a determination for R & C. The Agreement specifically contemplated that the work could be performed by third parties hired and selected by R & C.

*Id.* The same is true here. Reyes' Agreement with Hearst does not designate any particular person to deliver newspapers; that was a determination for Reyes to make. (*See* Lawson Decl. Ex. A ¶¶ 4, 5.) Likewise, the Agreement contemplated that third-parties would be hired or contracted by Plaintiff to perform these duties. (*See id.* ¶¶ 19, Schedule A.) The Agreement even refers to Reyes as a business. (*See id.* ¶ 5(j) ("Contractor is free to determine the quantity and type of supplies, labor and equipment Contractor chooses to utilize in its business.") If Reyes decided to deliver papers himself, it is no different than when a business owner takes on additional duties in the absence of other workers; this was a choice he made to maximize profit for his own business. Thus, he is not a "worker" within the meaning of Section 1.

### 2. Reyes Has Alleged Facts Inconsistent With A Finding That He Is A "Transportation Worker" Under *Rittman v. Amazon.com*.

Reyes fails to allege that any newspaper delivered pursuant to newspaper dealer agreements ever crosses state lines. Likewise, Reyes testifies that the completed goods he allegedly delivers (newspapers and their advertisements) are not fully arranged until he assembles them prior to delivery. (*See* Opp. at 6; ECF No. 23-4 ¶¶ 25-28.) This forecloses the "transportation worker" exemption to Reyes.

9
HEARST COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION AND STAY CASE

### 1. Reyes Is Not A "Worker" Within The Meaning Of § 1 Of The FAA.

While *New Prime Inc. v. Oliveira,* 139 S. Ct. 532, 535 (2019) clarified that "contracts of employment" within the meaning of Section 1 of the FAA may include "independent contractors," (*see* Opp. at 4), it did not hold that all "independent contractors" have "employment" contracts within the meaning of the FAA. *See* 139 S. Ct. at 544. Here, *R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339 (W.D. Pa. 2020) is instructive. In that case, the court rejected an "independent contractor's" effort to avoid arbitration, reasoning the contractor there was in fact was a small business and not a "worker" subject to a "contract of employment" as explained in *New Prime*. The court explained the plaintiff small business was not a "worker" because

> the Agreement made no specific designation as to which particular driver associated with R & C would actually perform the work under the Agreement. That was a determination for R & C. The Agreement specifically contemplated that the work could be performed by third parties hired and selected by R & C.

*Id.* The same is true here. Reyes' Agreement with Hearst does not designate any particular person to deliver newspapers; that was a determination for Reyes to make. (*See* Lawson Decl. Ex. A ¶¶ 4, 5.) Likewise, the Agreement contemplated that third-parties would be hired or contracted by Plaintiff to perform these duties. (*See id.* ¶¶ 19, Schedule A.) The Agreement even refers to Reyes as a business. (*See id.* ¶ 5(j) ("Contractor is free to determine the quantity and type of supplies, labor and equipment Contractor chooses to utilize in its business.") If Reyes decided to deliver papers himself, it is no different than when a business owner takes on additional duties in the absence of other workers; this was a choice he made to maximize profit for his own business. Thus, he is not a "worker" within the meaning of Section 1.

### 2. Reyes Has Alleged Facts Inconsistent With A Finding That He Is A "Transportation Worker" Under *Rittman v. Amazon.com*.

Reyes fails to allege that any newspaper delivered pursuant to newspaper dealer agreements ever crosses state lines. Likewise, Reyes testifies that the completed goods he allegedly delivers (newspapers and their advertisements) are not fully arranged until he assembles them prior to delivery. (*See* Opp. at 6; ECF No. 23-4 ¶¶ 25-28.) This forecloses the "transportation worker" exemption to Reyes.

In *Rittman v. Amazon.com*, the Ninth Circuit held that workers who transported goods from Amazon warehouses were "transportation workers" under the Section 1 exception because the completed goods they transported were, themselves, frequently transported from out of state and the workers in that case were the last part of this interstate shipment. 971 F.3d 904, 915 (9th Cir. 2020). *Rittman* explained that the focus of the Section 1 exception is whether the worker is "engaged in the channels of foreign or interstate commerce." 971 F.3d at 916-17.

The Opposition admits that Reyes does not cross state lines. (*See* Opp. at 6.) And he provides no other information about any interstate "transportation worker" activity. (*See* ECF No. 23-4 ¶¶ 25-27.) Thus, Reyes does not allege facts sufficient to show the exemption applies here. *Rittman*, 971 F.3d at 916-17. Accordingly, Reyes cannot demonstrate that the exemption applies and arbitration must be compelled even under the FAA.[7]

## IV.    CONCLUSION

For all of the reasons set forth above, Hearst respectfully requests that the Court grant its motion and order Plaintiff to arbitrate his claims and stay this case pending the completion of arbitration.

DATED: July 28, 2021                    Respectfully submitted,

SEYFARTH SHAW LLP
Camille Olson
Richard B. Lapp
Parnian Vafaeenia
Andrew Cockroft


By:  */s/ Richard B. Lapp*

Attorneys for Defendant
HEARST COMMUNICATIONS, INC.

---

[7] Though Reyes cites two cases discussing the impact the newspaper industry can have on interstate commerce, neither case addresses a worker's movement of newspaper products through the channels of commerce. (*See* Opp. at 5-6 (citing *Lorain J. Co. v. United States*, 342 U.S. 143 (1951); *Page v. Work*, 290 F.2d 323 (9th Cir. 1961).) Instead, both *Lorain* and *Page* considered what constituted monopolistic activity covered by the Sherman Antitrust Act. That standard is distinct from the "transportation worker" exception in the FAA. *See Rittmann,* 971 F.3d at 915. As such, they have no application here.