UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MANUEL REYES,

    Plaintiff,

    v.

HEARST COMMUNICATIONS, INC.,

    Defendant.

Case No. 21-cv-03362-PJH

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 14

    Defendant Hearst Communications, Inc.'s ("defendant") motion to compel arbitration came on for hearing before this court on August 12, 2021. Plaintiff Manuel Reyes ("plaintiff") appeared through his counsel, Scott Nakama and Daniel Martinez de la Vega. Defendant appeared through its counsel, Richard Lapp and Andrew Cockroft. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court **DENIES** defendant's motion.

### BACKGROUND

    Defendant distributes online and print media content. Dkt. 1 (Compl.) ¶ 8. Plaintiff is a "newspaper dealer." Id. ¶ 11. He spends most of his time "sorting" or "delivering" various publications for defendant. Dkt. 23-4 ¶¶ 2, 24. Those publications include the San Francisco Chronicle, Wall Street Journal, China Daily, Korean Times, and New York Times, id. ¶ 25, as well as other unspecified "advertisements," id. ¶ 28. Plaintiff's zone of delivery is limited to the Bay Area. Compl. ¶ 10(c); Dkt. 14-1 at 26-27.

    On May 5, 2021, plaintiff filed the instant action against defendant. In his complaint, plaintiff alleges that defendant has misclassified him as an independent

contractor. Compl. ¶¶ 8, 11-12. Based on that purported misclassification, plaintiff alleges numerous claims under the California Labor Code, the Fair Labor Standards Act, and the California Business & Professions Code. Id. ¶¶ 22-84.

On July 7, 2021, defendant filed the instant motion to compel this action to arbitration. Dkt. 14. To support its request, defendant relies on both the Federal Arbitration Act ("FAA"), Title 9 U.S.C. § 3, *et. seq.* and its state law counterpart, the California Arbitration Act ("CAA"), California Code of Civil Procedure § 1280, *et. seq.*. Id.

Defendants bases its motion on a 24-page agreement signed by plaintiff on December 2, 2019. Dkt. 14-1. That agreement is titled "San Francisco Chronicle . . . Contractor Home Delivery Agreement." Id. at 4.[1] The court will refer to it as the "contractor agreement." The contractor agreement comprises 23 paragraphs and various schedules. Paragraph 18 details the arbitration provision at issue. Id. ¶ 18. That paragraph comprises eleven subparts. Id. ¶ 18(a)-(k). The court will detail the contractor agreement, the arbitration provision, and other relevant facts as necessary below.

## DISCUSSION

As noted above, defendant relies on the FAA and CAA as alternative grounds for granting its requested relief. The court addresses the applicability of each act in turn.

**I.     The FAA Does Not Apply to This Action**

"The FAA generally provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Rittmann v. Amazon.com, Inc., 971 F.3d 904, 909 (9th Cir. 2020), cert. denied, 141 S. Ct. 1374, 209 L. Ed. 2d 121 (2021). Any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). The

---

[1] In support of his opposition, plaintiff attaches an identical 24-page agreement to his declaration. Compare Dkt. 14-1 at 4-27 (defendant's version) with Dkt. 23-4 at 26-49 (plaintiff's version). The court will cite only docket 14-1 when discussing the agreement.

2

FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

Title 9 U.S.C. § 2, however, "exempts certain contracts from its scope, specifically the employment contracts of 'seamen, railroad employees, and any other class of workers engaged in foreign or interstate commerce.'" Rittmann, 971 F.3d at 909.

In Rittman, the Ninth Circuit considered whether workers who provided delivery services for Amazon were "engaged in interstate commerce" when they made "'last mile" deliveries of packaged products from Amazon warehouses to the packages' destinations. Rittmann, 971 F.3d at 907. Those workers were primarily engaged in intrastate deliveries. Id. They only "occasionally" crossed state lines to make such deliveries. Id.

The panel in Rittman held that the delivery workers fell within the scope of Title 9 U.S.C. § 2's exemption. Id. at 909. Relevant here, the panel reasoned that the subject packages "are goods that remain in the stream of interstate commerce until they are delivered." Id. at 915. It explained that, because the Amazon workers completed such "last mile" deliveries, they were "engaged in the movement of interstate commerce." Id.

More recently, the Ninth Circuit considered similar facts in Romero v. Watkins and Shepard Trucking Inc., -- F.4th --, 2021 WL 3671380 (9th Cir. Aug. 19, 2021). In that case, defendant "operated an interstate trucking business, and [plaintiff's] job was to deliver furniture and carpet to retail stores in California. The product often originated from outside of the state, but [plaintiff] made deliveries only within California." Romero, 2021 WL 3671380 at *1. Citing Rittman, the panel in Romero found that the nature of the goods delivered by plaintiff put him "within the class of workers which [Title 9 U.S.C.] § 1 excludes from the FAA's coverage." Id. at *3.

The court concludes that Rittman and Romero control its determination that plaintiff qualifies as a transportation worker engaged in interstate commerce. Critically, in his declaration, plaintiff says that he "delivers advertisements that [are] shipped in boxes from other states." Dkt. 23-4 ¶ 28. He also says that defendant's newspapers arrive to its South San Francisco warehouse "by large trucks and are on wooden shipping pallets"

and that those pallets are "split up and sorted among the [newspaper] dealers." Id. ¶ 27.

In its reply, defendant does not proffer any evidence contesting the accuracy of plaintiff's statements. It also fails to offer any evidence otherwise suggesting that the subject publications come from within California.

Based on plaintiff's uncontested statements, the court finds that the publications delivered by plaintiff come from outside California. Because plaintiff delivers such publications to their subscribers in the Bay Area, he qualifies as a worker "engaged in the movement of interstate commerce." Rittmann, 971 F.3d at 909; Romero, 2021 WL 3671380, at *3. Given that, the court concludes that the FAA does not apply to this action in the first instance.

Defendant's remaining contentions do not alter this conclusion. First, defendant argues that plaintiff does not qualify as a "worker" within the meaning of Title 9 U.S.C. § 2 because he may enlist third parties to deliver publications on his behalf. Dkt. 24 at 14. Perhaps. But that argument overlooks plaintiff's uncontested statement that *he* himself sorts and delivers defendant's publications. Dkt. 23-4 ¶¶ 24-28.

Second, defendant argues that plaintiff may not rely on Rittman because the publications that he delivers are "not fully arranged until he assembles them prior to delivery" and plaintiff admits that he "does not cross state lines." Dkt. 24 at 14-15.

Both criticisms miss the mark. With respect to the first criticism, the fact that plaintiff not only delivers but also assembles the subject publications does not detract from his role in moving them through the channels of interstate commerce. The second criticism fundamentally misunderstands Rittman's ruling. Rittman, 971 F.3d at 915 ("[W]e conclude that § 1 exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines.").

## II.  The CAA Does Not Provide an Alternative Basis to Compel Arbitration

California Code of Civil Procedure § 1281 ("CCP § 1281") states that:

> A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist

for the revocation of any contract.

The California Supreme Court has explained that, as a general matter, CCP § 1281 and Title 9 U.S.C. § 2 are identical in that both sections require courts to enforce an arbitration agreement unless that agreement may "be invalidated for the same reasons as other contracts." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 98 (2000). Unlike the FAA, though, the CAA does not exempt workers engaged in interstate commerce. Id.

In its reply, defendant picks up on that distinction. Pivoting its argument away from the FAA, defendant primarily asserts that, regardless of that act's (in)applicability, the CAA requires the court to compel this action to arbitration. Dkt. 24 at 8-9.

The court disagrees. Following the court's hearing on this motion, the Ninth Circuit issued its decision in Lim v. TForce Logistics, LLC, -- F.4th --, 2021 WL 3557294 (9th Cir. Aug. 12, 2021). In Lim, the panel considered the unconscionability of an agreement between a company and an allegedly misclassified employee-worker. Id. at *2. Relevant here, the agreement included an arbitration provision that generally required the parties to "split" any arbitration fees. Id.

The panel in Lim held that that arbitration fee-splitting requirement is substantively unconscionable under California law. Lim, 2021 WL 3557294, at *8. To support that holding, the panel relied on the Armendariz court's ruling that:

> [W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. Lim, 2021 WL 3557294, at * 6 (citing Armendariz, 24 Cal. 4th at 110-11) (emphasis in the original).

In this case, the arbitration provision includes a substantially similar requirement at paragraph 18(j). In particular, that subparagraph states the following:

> (j) Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. **The Arbitrator's and/or arbitration fees will be apportioned equally between the parties**, and any disputes in that regard will be resolved by the Arbitrator.

Dkt. 14-1 at 16 ¶ 18(j) (emphasis added).

By its plain text, paragraph 18(j)'s fee-splitting requirement extends to all arbitration fees. Such fees may include both those incurred for an arbitrator to determine the gateway issue of whether an action is subject to arbitration and, if so, the merits of such action. Accordingly, the court concludes that paragraph 18(j) is substantively unconscionable with respect to **both** the delegation clause (paragraph 18(c) in particular) and arbitration provision (paragraph 18 more broadly).

That leaves only procedural unconscionability. That element "focuses on 'oppression or surprise due to unequal bargaining power.'" Lim, 2021 WL 3557294, at *5. In his declaration, plaintiff states that he primarily speaks Spanish, is not fluent in reading or writing English, and was offered only an English version of the contractor agreement. Dkt. 23-4 ¶¶ 3, 6, 9. Plaintiff adds that "[he] and other drivers entered into the same form agreements with blank sections to be filled with the rate they would receive per delivery." Id. ¶ 17.

Defendant does not contest plaintiff's second statement. Defendant does, however, contest plaintiff's purported language limitations. Dkt. 24-2 ¶¶ 17-19. In light of the evidence presented, the court finds plaintiff's version on that issue persuasive. Based on the above two statements, the court concludes that plaintiff proffered sufficient evidence of surprise and oppression to justify finding that the arbitration provision qualifies as unconscionable.

To be sure, the court understands that the parties offer conflicting evidence concerning numerous other procedural unconscionability-related facts. For example, the parties dispute whether defendant required plaintiff to sign the contractor agreement as a condition of employment. Compare Dkt. 23-4 ¶ 10 with Dkt. 24-2 ¶ 20. That said, given the clarity and weight of paragraph 18(j)'s substantive unconscionability, the court need not resolve those conflicts in plaintiff's favor to justify its finding of unconscionability. Lim, 2021 WL 3557294, at *5 (describing California unconscionability doctrine as a "sliding scale . . . such that the more substantively oppressive the contract term, the less

6

evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."). Because paragraph 18(j)'s fee-splitting requirement is unconscionable and extends to all arbitration expenses, the court concludes that the arbitration provision is unenforceable in its entirety.

Lastly, to the extent defendant invites the court to simply sever paragraph 18(j), Dkt. 24 at 12-13, the court declines. First, defendant does not explain why such severance would be justified under California Civil Code § 1670.5 in the first instance. Second, the panel in Lim expressly recognized that district courts properly deny a request to sever an unconscionable term if doing so would encourage persons to "overreach" when drafting an agreement with the fallback expectation that they could later "whittle down to the least offensive agreement if faced with litigation." Lim, 2021 WL 3557294, at *9. The court finds that, in this case, severing paragraph 18(j) would incentivize such improper, strategic behavior.

For the above reasons, the court rejects defendant's alternative position that the CAA separately requires the court to compel this action to arbitration.

## CONCLUSION

For the above reasons, the court **DENIES** defendant's motion to compel this action to arbitration.

**IT IS SO ORDERED.**

Dated: August 24, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge